

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1995

# Mitchum v. Hurt

Precedential or Non-Precedential:

Docket 94-3358

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Mitchum v. Hurt" (1995). *1995 Decisions.* Paper 327.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/327

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 94-3358

———————

KENNETH L. MITCHUM, DEBORAH L. WEBB,
STEVEN J. KRUMHOLZ, COLLEEN M. EVANS,
for themselves in their own right, and
on behalf of employees and patients of
the Veterans Administration Center,
Highland Drive,

Appellants

v.

REEDES HURT, DANIEL P. VAN KAMMEN,
DENNIS M. LEWIS, JANIS A. DOMZAL,
VALERIE DELISE, PAMELA JACKSON-MALIK,
ROBERT PICIRELLI,

Appellees

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 93-00204)

———————

Argued:  January 12, 1995
Before:  COWEN, NYGAARD, and ALITO, <u>Circuit Judges</u>

(Opinion Filed: December 29, l995)

———————

JON PUSHINSKY, ESQ. (Argued)
MICHAEL L. ROSENFIELD, ESQ.
1808 Law & Finance Bldg.
Pittsburgh, PA 15219

<u>Counsel for Appellants</u>

FREDERICK W. THIEMAN
United States Attorney

MICHAEL L. IVORY (Argued)
Assistant U.S. Attorney
633 U.S. Post Office & Courthouse
Pittsburgh, PA  15219

Counsel for Appellees

_____

OPINION OF THE COURT
_____

ALITO, Circuit Judge:

This is an appeal by three current or former employees of the Veterans Administration Medical Center ("VAMC") in Pittsburgh, who filed an action against VAMC administrators, claiming, among other things, that the administrators had violated the employees' First Amendment rights by retaliating against them for making statements intended to secure improvements for VAMC patients. The employees sought injunctive and declaratory relief for these alleged constitutional violations but no damages. The district court granted summary judgment for the defendants on these claims, holding that under Bush v. Lucas, 462 U.S. 367 (1983), the plaintiffs could not assert such claims in federal court but were instead required to pursue available administrative remedies. Because Bush and the other Supreme Court decisions on which the defendants rely concern the recognition of non-statutory damages remedies rather than injunctive and declaratory relief, we reverse.

2

The three appellants in this case are Kenneth L. Mitchum, previously Chief of Medical Services of the VAMC[1]; Deborah L. Webb, Assistant Chief Nurse for Special Projects; and Steven J. Krumholz, Staff Assistant to the Associate Director. All three appellants could have pursued administrative remedies to vindicate the alleged violations of their First Amendment rights.

Krumholz enjoyed the protection of the Civil Service Reform Act of 1978 (CSRA), Pub. L. 95-454 (codified at various sections of Title 5 U.S.C.), and the Whistle-Blower Protection Act of 1989, Pub. L. 101-12 (codified at various sections of Title 5 U.S.C.). Under the CSRA, retaliation against a "whistle-blower" is a prohibited personnel practice." 5 U.S.C. §2302(b)(8). An allegation of a "prohibited personnel practice" may be submitted to the Office of Special Counsel (OSC) of the Merit System Protection Board (MSPB).[2] 5 U.S.C. §§ 1212(a)(2), 1214(a)(1)(A). The OSC must investigate such an allegation and determine "whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." 5 U.S.C. § 1214(a)(1)(A). If the OSC determines that no

---

[1] Mitchum left the Veterans Administration before this appeal was argued, but he claims that he continues to be harmed by the presence in his personnel file of allegedly false and misleading statements concerning events at issue in this action. He seeks the removal of these statements from his file. All parties take the position that Mitchum's claims are not moot, and we agree.

[2] Krumholz began to use these procedures by filing an administrative complaint, but his complaint was dismissed under 29 C.F.R. § 1614.107(c) because the district court action had already been commenced and was still pending.

such grounds exist, the person who submitted the allegation must be notified. 5 U.S.C. § 1214(a)(2)(A). While the investigation continues, the OSC must periodically notify the person who made the allegation of its status. 5 U.S.C. § 1214(a)(1)(C). If the OSC determines that there are reasonable grounds to believe that the prohibited personnel action was or is to be taken, the OSC may petition a member of the MSPB for a stay and may recommend "corrective action" to the agency involved, the MSPB, and the Office of Personnel Management. 5 U.S.C. §1214(b)(1)(A)(i),(2)(B). The OSC may also recommend disciplinary action against an employee who is reasonably believed to have committed a prohibited personnel practice. 5 U.S.C. §1215(a)(1)(A).

Where the allegation submitted to the OSC concerns retaliation for whistle-blowing, review by the MSPB is always available. If the OSC notifies the person making the allegation that the investigation has been terminated or if the OSC does not notify this person within 120 days that corrective action will be taken, the person may seek corrective action from the MSPB (5 U.S.C. §§ 1214(a)(3), 1221(a)), and the MSPB may issue a stay and order "such corrective action as [it] considers appropriate." 5 U.S.C. § 1214(b)(4)(A). A final order or decision of the MSPB is subject to judicial review in the United States Court of Appeals for the Federal Circuit. 5 U.S.C. §§ 1221(h), 7703(b).

Mitchum and Webb were appointed to their positions under 38 U.S.C. §7401(1) and were subject to a different statutory scheme. Under this scheme, the most extensive review

4

is available in a case involving a "major adverse action" based on "conduct or performance."  The term "major adverse action" is defined as including a suspension, transfer, reduction in grade or basic pay, or discharge.  38 U.S.C. § 7461(c)(2).  A question of professional conduct or competence is defined as a question involving "[d]irect patient care" or "[c]linical competence."  38 U.S.C. § 7461(c)(3).  In a case concerning a "major adverse action" based on "conduct or performance" or in a so-called "mixed case" -- i.e., one involving both a "major adverse action" based on "conduct or performance" and other adverse actions (see 38 U.S.C. § 7462(a)(3)) -- the appointee may appeal to a Disciplinary Review Board (DAB).  38 U.S.C. § 7462(a).  After the DAB renders a decision, the Secretary may, pursuant to that decision, "order reinstatement, award back pay, and provide such other remedies as the Board [finds] appropriate . . ., including expungement of records relating to the action."  38 U.S.C. §7462(d)(1).  An appointee adversely affected by a DAB decision, as reviewed by the Secretary, may obtain judicial review.  38 U.S.C. § 7462(f)(1).

Grievances not involving a "major adverse action" based on "conduct or performance" or a "mixed case" proceed through internal VA administrative channels or those specified in an applicable collective bargaining agreement.  38 U.S.C. §§7461(b)(2), 7463.[3]

---

[3]Neither side in this case has expressly taken a position on the question whether the grievances of Mitchum and Webb could have been appealed to the DAB and reviewed by the Federal Circuit, and we express no view on this question.

5

Instead of pursuing these remedies, the appellants filed an action in district court against the VAMC's director, chief of staff, associate director, chief of nursing service, and chief nurse, as well as the regional chief nurse of the Department of Veterans Affairs. The complaint contained five counts, but only the second is involved in this appeal.

Count II alleged that in 1991 Mitchum began to criticize the manner in which patients were treated at the VAMC. According to the complaint, Mitchum complained about efforts to close a unit of the facility, a general decline in patient care, the death of a patient in June 1992, patient nutrition, and the "warehousing" of psychiatric patients in the non-psychiatric unit.

Because of these criticisms, the complaint asserted, Mitchum's superiors took retaliatory measures against him. According to the complaint, Mitchum had received at least "highly satisfactory" evaluations in the years before 1992, but he received only a "satisfactory" rating in his 1991-92 performance review. The complaint further alleged that he was given oral warnings concerning his performance and received a "Notice of Less Than Satisfactory Performance" in October 1992; that his superiors and other defendants acted in concert to inhibit his promotions and cause his resignation; and that his superiors removed him from his appointment to the Nutrition Support Team and his position as Acting Chief of the Rehabilitation Medicine Service. Count II alleged that, at about the same time, Webb began to criticize the manner in which patients were treated and

6

was likewise targeted for retaliation.  According to the complaint, Webb had received promotions and outstanding performance evaluations until 1992, but in September 1992 she received a written "Counseling for Performance" and was subsequently demoted.

The complaint alleged that Krumholz had complained in September 1992 to the Department of Veterans Affairs Inspector General's office that his boss had committed plagiarism and that there had been an attempt to serve outdated food to patients.  Although Krumholz had previously received excellent evaluations, the complaint alleged, he was subsequently given oral and written counsellings and was demoted.

Count II purported to assert a claim under 42 U.S.C. §1983 and sought various forms of injunctive and declaratory relief, including an order directing the defendants to cease and desist from retaliation, harassment, and reprisal; an order directing the removal of certain documents from the plaintiffs' files; and an order directing the appointment of a permanent community-based board of overseers to monitor the operations of the facility.  Webb and Krumholz also sought reinstatement to their prior positions.

The defendants moved for dismissal or in the alternative for summary judgment, and the magistrate judge to whom this motion was referred recommended that it be granted. With respect to Count II, the magistrate judge first observed that 42 U.S.C. § 1983 does not authorize a suit against federal officials.  Turning to the plaintiffs' argument that Count II

7

should be treated as asserting Bivens claims,[4] the magistrate judge observed that in Bush the Supreme Court had declined to recognize a Bivens claim very similar to those asserted by the plaintiffs here. In rendering that decision, the magistrate judge wrote, the Supreme Court "reasoned that Congress had set up an elaborate and carefully thought out system for civil servants to obtain review of employment decisions" and that the judiciary should not alter that system by recognizing "an additional damages claim against a supervisor for violation of First Amendment rights."

The magistrate judge found this same reasoning to be applicable here. The magistrate judge noted that Krumholz, like the plaintiff in Bush, was subject to the CSRA, and that the remaining plaintiffs, as appointed Veterans Administration employees, had "an avenue of relief for adverse employment actions pursuant to 38 U.S.C. § 7401(1)." The magistrate judge stated that "[i]f a Bivens action is inappropriate when the CSRA applies to employment decisions, such action is equally inappropriate where Title 38 remedies apply." The magistrate judge acknowledged that the "Supreme Court in Bush addressed only the issue of a damages remedy, and not a request for injunctive relief." However, the magistrate judge continued:

> The rationale of Bush . . . is equally applicable to injunctive relief as to money damages. The Supreme Court was convinced that Congress had given careful thought to the extent and nature of remedies that ought to be made available to federal employees in

---

[4]See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

8

> situations involving adverse employment decisions.  Any extension of those remedies, whether involving damages or injunctive relief, ought to originate in Congress, and not the courts.

The district court adopted the magistrate judge's opinion and granted summary judgment in favor of the defendants on Count II.  The court ordered the dismissal of some of the other counts and entered summary judgment in favor of the defendants on all of the remaining counts.  This appeal followed.

II.

In Bush, a federal employee asserted a First Amendment claim that was quite similar in all respects but one to the claim of the appellants in this case.  In Bush, the employee contended that he had been suspended in retaliation for whistle-blowing, and although he had been restored to his prior position with backpay as a result of administrative proceedings, he sought to obtain damages and attorney's fees in a Bivens action.  462 U.S. at 369-72 & nn. 8 and 9.  The Supreme Court, however, declined to create the "new judicial remedy" that he sought.  Id. at 368. The Court noted that a Bivens action could be defeated where there are "`special factors counselling hesitation in the absence of affirmative action by Congress.'"  Id. at 377 (quoting Bivens, 403 U.S. at 396), and the Court found such a factor in the "comprehensive procedural and substantive provisions" of the CSRA.  Id. at 368.  The Court noted that this "elaborate remedial system" had been "constructed step by step, with careful

9

attention to conflicting policy considerations." Id. at 388. The Court observed that the risk of personal liability could deter supervisors from imposing discipline and that Congress was in "a far better position that a court to evaluate the impact of a new species of litigation between federal employees or the efficiency of the civil service." Id. at 389. The Court thus declined "to create a new substantive legal liability without legislative aid[.]'" Id. at 390 (citation omitted).

Two years later, in United States v. Fausto, 484 U.S. 439 (1988), the Court pointed to the comprehensive nature of the CSRA in holding that a federal employee could not seek backpay under the Back Pay Act, 5 U.S.C. § 5596, even though such claim had won judicial recognition prior to the CSRA. Later the same term, in Schweiker v. Chilicky, 487 U.S. 412 (1988), the Court relied on Bush in refusing to recognize a non-statutory damages claim for the unconstitutional denial of Social Security disability benefits. The Court observed that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies." Id. at 423.

Based on these decisions -- and in particular on Bush -- a good argument can be made that a federal employee who has meaningful administrative remedies and a right to judicial review under the CSRA or another comparable statutory scheme should not be permitted to bypass that scheme by bringing an action under 28 U.S.C. § 1331 and seeking injunctive or declaratory relief.

10

Several courts of appeals have so held, and these decisions have much to recommend them.  See, e.g., Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991); Stephens v. Dep't of Health and Human Services, 901 F.2d 1571, 1575-77 (11th Cir. 1990); Lombardi v. Small Business Administration, 889 F.2d 959, 962 (10th Cir. 1989).[5]

The District of Columbia Circuit, however, has reached the opposite conclusion.  In Hubbard v. EPA, 809 F.2d 1 (D.C. Cir. 1986), an unsuccessful applicant for a position as a criminal investigator with the Environmental Protection Agency claimed that he had been rejected because he had previously engaged in communications with the press that were protected by the First Amendment.  The panel that initially heard the appeal held that Bush defeated the applicant's Bivens claim for damages but permitted him to seek the equitable remedy of reinstatement. Id. at 11.  The panel wrote:

> "[There is a] presumed availability of federal equitable relief against threatened invasions of constitutional interests." Bivens, 403 U.S. at 404, 91 S. Ct. at 2008 (Harlan, J., concurring).  See also Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 283-84, 97 S. Ct. 568, 574-75, 50 L.Ed.2d  471 (1977); Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15, 91 S. Ct. 1267, 1275, 28 L.Ed.2d 554 (1971).  In particular, this Circuit has recognized the right of a federal job applicant to seek injunctive relief from an agency's violation of his constitutional rights in general . .  . and his first amendment rights in particular. . . .

[5]See also Bryant v. Cheney, 924 F.2d 525, 528 (4th Cir. 1991) (reserving decision); Pinar v. Dole, 747 F.2d 899 (4th Cir. 1984) (no claim for injunctive relief for "minor" personnel action).

11

Id. (footnote & citations omitted).  In a footnote, the panel

explained:

> Allowing federal employees and
> applicants to seek equitable relief in
> federal courts for allegedly unconstitutional
> personnel actions suggests an "end-run"
> problem. . . .
>
> Yet the rule in this Circuit, which has
> been repeatedly applied, is clearly
> different: CSRA does not preclude federal
> employees form seeking equitable relief
> against agencies for allegedly
> unconstitutional personnel actions. . . .
>
> The courts' power to impose equitable
> remedies against agencies is broader than its
> power to impose legal remedies against
> individuals.  Bivens actions are a recent
> judicial creation and . . . comparatively
> easy for Congress to preempt.  The court's
> power to enjoin unconstitutional acts by the
> government, however, is inherent in the
> Constitution itself, see Marbury v. Madison,
> 5 U.S. (1 Cranch) 137, 2 L.Ed.60 (1803).
> Although Congress may limit this power, see
> Ex Parte McCardle, 74 U.S. (7 Wall) 506, 19
> L.Ed. 264 (1869), CSRA did not explicitly
> limit our jurisdiction to enjoin
> unconstitutional personnel actions by federal
> agencies.

Id. at 11 n.15.


The portion of the panel decision concerning the claim

for damages was reheard en banc and reaffirmed by the full court.

Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988).  Although the

en banc court did not rehear the issue of the claim for

reinstatement, it commented:

> [W]e do not suggest that CSRA precludes the
> exercise of federal jurisdiction over the
> constitutional claims of federal employees
> and job applicants altogether. . . .  On the

12

> contrary, time and again this court has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights. See, e.g. Hubbard v. EPA, 809 F.2d 1, 11 (D.C.Cir. 1986). . . .

Id. at 229 (footnote and citations omitted). On balance, we think that the District of Columbia Circuit has taken the better course. The power of the federal courts to grant equitable relief for constitutional violations has long been established. See, e.g., Osborn v. United States Bank, 9 Wheat. 738, 838-46, 859 (1824); Ex parte Young, 209 U.S. 123, 156 (1908). Thus, as the District of Columbia Circuit observed, there is a "`presumed availability of federal equitable relief against threatened invasions of constitutional interests.'" Hubbard, 809 F.2d at 11 (quoting Bivens, 403 U.S. at 404 (Harlan, J., concurring in the judgment)). It is reasonable to assume that Congress legislates with the understanding that this form of judicial relief is generally available to protect constitutional rights. While Congress may restrict the availability of injunctive relief (see, e.g., 28 U.S.C. §§ 1341, 2283; 26 U.S.C. § 7421(a)), we believe that we should be very hesitant before concluding that Congress has impliedly imposed such a restriction on the authority to award injunctive relief to vindicate constitutional rights.

It is true that Bush found that the history and structure of the CSRA spoke with sufficient clarity to preclude the creation of a new Bivens claim. But the Supreme Court has developed a special jurisprudence for Bivens claims, and we are

13

hesitant to extend this jurisprudence into other spheres. Just because "special factors counselling hesitation" militate against the creation of a new non-statutory damages remedy, it does not necessarily follow that the long-recognized availability of injunctive relief should be restricted as well. We assume that the power of the federal courts to award legal and equitable relief in actions under 28 U.S.C. § 1331 stems from the same source, see Bush, 462 U.S. at 374, but that does not mean that the factors that counsel against one type of relief are equally applicable with respect to the other. See Bivens, 403 U.S. at 405-06 (Harlan, J., concurring in the judgment); Dellinger, Of Rights and Remedies:  The Constitution As A Sword, 85 Harv. L. Rev. 1532, 1543 (1972).

As we have noted, a good argument can be made that the reasoning of Bush should be applied to cases involving only injunctive relief, but this application involves a big and important jump. Without more specific guidance from the Supreme Court, we do not think that this is a jump that we should make. We therefore hold that Bush and the related Supreme Court decisions on which the defendants rely did not prevent the district court from entertaining the appellants' requests for injunctive relief. Nor do we interpret these precedents as limiting the district court's authority to award declaratory relief under 28 U.S.C. §§ 2201-02.[6]

---

[6]We do not reach the question whether such relief would be inappropriate for any other reason.

### III.

For these reasons, the order of the district court is reversed, and the case is remanded.