**Stephen PERDEAUX, et al., Plaintiffs,**

v.

**UNITED STATES of America; William Jefferson Clinton, President of the United States; Janet Reno, United States Attorney General; Eduardo Gonzalez, Director of the United States Marshals Service; and James B. King, Office of Personnel Management, Defendants.**

No. 96 CV 1267.

United States District Court, E.D. New York.

Jan. 23, 1999.

Lawrence Berger, Mahon & Berger, Garden City, NY, for plaintiffs.

Sandra Levy, Assistant United States Attorney, United States Attorney's Office, Brooklyn, NY, for defendants.

## ORDER

GERSHON, District Judge.

Plaintiffs, 64 field witness security specialists for the United States Marshals Service ("USMS"), bring an action in mandamus to compel the USMS to classify them at grade GS–13. Plaintiffs claim that, in 1993, the USMS promoted them to grade GS–13, then failed to implement the promotion as required under 5 C.F.R. § 511.701(a)(2). Specifically, plaintiffs allege that, on July 7, 1993, Kaye McWhirter, a USMS employee who had been granted authority to approve classification actions by the USMS Personnel Officer, upgraded them from field witness security specialists at grade GS–12 to criminal investigators at grade GS–13. Plaintiffs further allege that this administrative upgrade was approved by both the chief and the deputy chief of the Witness Security Program, but was never implemented.

Plaintiffs assert violations of various provisions of the Code of Federal Regulations ("CFR"), the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Fifth Amendment to the United States Constitution. They seek a declaration that they occupy positions as criminal investigators at grade GS–13 retroactive to July 7, 1993, an injunction prohibiting the USMS from maintaining them at grade GS–12, and a writ of mandamus directing defendants to promote them to grade GS–13 retroactive to July 7, 1993.

Defendants move to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment. Defendants argue that: (1) this court does not have jurisdiction over

plaintiffs' claims because they have failed to exhaust their administrative remedies under the Classification Act, 5 U.S.C. §§ 5101–5115, and the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. 95–454, 92 Stat. 1111 et seq. (codified in various provisions of Title 5 of the United States Code); (2) plaintiffs cannot use the APA to bypass the exhaustion requirement of the CSRA; (3) plaintiffs cannot recharacterize their statutory claims as a deprivation of property in violation of the Fifth Amendment; and (4) even if this court did have jurisdiction over plaintiffs' claims, they cannot establish that their position was actually upgraded to GS–13.

## DISCUSSION

### 1. Jurisdiction

#### a. Statutory Claims

Section 5107 of the Classification Act provides that it is the responsibility of each federal agency to place every position under its jurisdiction in the appropriate class and grade in conformity with standards published by the Office of Personnel Management ("OPM"). Section 5107 further provides that an agency may change a position that it has classified under this section to another class or grade. Pursuant to 5 C.F.R. § 511.701(a)(2), when an agency reclassifies a position to a higher grade, it must implement the reclassification within a "reasonable time" by promoting, or removing, the incumbents to the newly upgraded position. Plaintiffs rely on a ruling by the Comptroller General to assert that a "reasonable time" means no later than the beginning of the fourth pay period following the effective date of the classification decision. 53 Comp.Gen. 216 (1973).

It is undisputed that plaintiffs were neither promoted nor removed from their positions at grade GS–12 within four pay periods following the alleged upgrade and that they still have not been promoted. On this basis, plaintiffs allege violations of 5 C.F.R. § 511.701(a)(2) and the APA. Defendants argue that this court lacks subject matter jurisdiction over plaintiffs' claims because they have failed to exhaust their administrative remedies under 5 U.S.C. § 5112.

Pursuant to 5 U.S.C. § 5112(a), the OPM is authorized to: (1) "ascertain currently the facts as to the duties, responsibilities, and qualification requirements of a position"; (2) "place in an appropriate class and grade a newly created position"; (3) "decide whether a position is in its appropriate class and grade"; and (4) "change a position from one class or grade to another class or grade when the facts warrant." An employee affected by an agency's classification decision may file a "classification appeal", and the OPM is statutorily required to act on such request. 5 U.S.C. § 5112(b). If an employee is not satisfied with the OPM's decision on a classification appeal and believes that the classification decision constitutes a "prohibited personnel practice," the employee may seek recourse through the Office of Special Counsel ("OSC"). *See Barnhart v. Devine*, 771 F.2d 1515, 1524 (D.C.Cir.1985); *Carducci v. Regan*, 714 F.2d 171, 175 (D.C.Cir.1983); *Benson v. Office of Personnel Management*, 1996 WL 19166 * 4 (E.D.N.Y.1996). If the OSC fails to take action, the employee may bring an action in mandamus to compel the OSC to perform its duty. *See Barnhart*, 771 F.2d at 1524. The employee may not, however, file a claim in federal court alleging a prohibited personnel practice without seeking recourse through the OSC first. *See id.* (dismissing action by employees who filed a petition with the OPM but did not present their grievance to the OSC before filing an action in mandamus in federal court).

Defendants contend that, because plaintiffs neglected to file an appeal with the OPM and/or to seek recourse through the OSC, they failed to exhaust their administrative remedies. Though plaintiffs have provided copies of their letters to the OPM requesting that it enforce the upgrade, they acknowledge that they never filed a formal "classification appeal" with the OPM and that they did not seek recourse with the OSC. Plaintiffs argue that the classification appeal procedures were not applicable to them because they did not seek to challenge the classification decision of the USMS (in fact, they agreed with it), but rather to have the OPM force the USMS to comply with its "ministe-

rial", "mandatory" duty to implement the upgrade.

Whether or not plaintiffs were required to file a classification appeal with the OPM, they clearly sought to object to a "prohibited personnel practice" on the part of the USMS and, as a result, they were, at the least, required to appeal to the OSC. A "prohibited personnel practice" is defined in the CSRA to include the taking of or failure to take a personnel action "if the taking of or failure to take such action *violates any law, rule or regulation* implementing or directly concerning the merit system principles." 5 U.S.C. § 2302(b)(11) (emphasis added). The CSRA defines "personnel action" to include "decision[s] concerning pay." 5 U.S.C. § 2302(a)(2)(A)(ix). Since classification decisions concern pay, they have been held to constitute personnel decisions. *See Karamanos v. Egger,* 882 F.2d 447, 451 (9th Cir.1989) ("Classification decisions are personnel decisions because they concern pay, and because the code defines personnel decisions as decisions 'concerning pay, benefits, or awards.' "); *Towers v. Horner,* 791 F.2d 1244, 1247 (5th Cir.1986) (same).

The plaintiff in *Kleiman v. Department of Energy,* 956 F.2d 335 (D.C.Cir.1992), brought an action alleging that his job title and description did not accurately reflect his actual duties. Kleiman asserted that he was not required to exhaust his administrative remedies under the CSRA because he was not requesting judicial review of a personnel decision but was merely seeking to ensure the accuracy of his job description. *See id.* at 338. The D.C. Circuit found this a "distinction without a difference" and dismissed the case because, given Kleiman's claim, the agency would have to review his file and, were Kleiman successful, the agency would have been obligated to amend his personnel forms. *See id.* Similarly, here, were plaintiffs successful, the USMS would be required to implement the upgrade, thereby granting plaintiffs the same relief—an increase in pay—as they would have received had they prevailed on a formal classification appeal. Therefore, although plaintiffs' claim differs from the typical classification appeal in which an employee requests or objects to a change

in classification, the scope of review required of the OSC and the relief sought by the plaintiffs are the same. Accordingly, plaintiffs' claim constitutes an objection to a "prohibited personnel practice," and it should have been brought before the OSC.

Plaintiffs' reliance upon the court's mandamus jurisdiction does not alter this conclusion. 28 U.S.C. § 1361 provides the district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, a writ of mandamus is appropriate only where the defendant owes the plaintiff a clear, nondiscretionary duty, and all other avenues of relief have been exhausted. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Here, even assuming plaintiffs had a clear right to the promotion to GS–13, given plaintiffs' failure to exhaust, this court cannot exercise jurisdiction over their claim under the CFR. *See, e.g., Karamanos,* 882 F.2d at 450; *Towers,* 791 F.2d at 1247.

Plaintiffs' claim under the APA must also be dismissed. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, an employee is not permitted to circumvent the administrative scheme outlined in the CSRA by bringing the same claim under the more general APA. *Tiltti v. Weise,* 155 F.3d 596, 601 (2d Cir.1998). To allow plaintiffs to bring "suit under the APA ... would 'encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established.' " *Broadway v. Block,* 694 F.2d 979, 986 (5th Cir.1982) (citation omitted).

### b. Constitutional Claim

Plaintiffs assert that the USMS's failure to implement the upgrade constitutes a deprivation of property without due process of law in

violation of the Fifth Amendment to the United States Constitution.

In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court held that a federal employee who was demoted for criticizing a government agency could not sue government officials for a violation of his First Amendment rights under *Bivens v. Six Unknown Agents of Fed'l Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), because he had a meaningful statutory remedy. The Court explained: "The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." *Bush,* 462 U.S. at 388, 103 S.Ct. 2404. In *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court rejected claims premised upon the denial of Fifth Amendment rights that were advanced by social security disability benefit recipients. In so doing, the Court elaborated on its holding in *Bush,* stating that, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies." *Id.* at 423, 108 S.Ct. 2460. *See also, Robbins v. Bentsen,* 41 F.3d 1195, 1202–03 (7th Cir.1994); *Saul v. United States,* 928 F.2d 829, 835–40 (9th Cir.1991); *Karamanos,* 882 F.2d at 452 ("Because Congress provided some mechanism for appealing adverse personnel actions, we can not infer that the failure to provide complete relief was 'inadvertent.'"); *Broadway,* 694 F.2d at 985 (recognizing Fifth Circuit's "reluctan[ce] to extend a Bivens remedy to federal employees in suits against the government in its capacity as an employer.").

In light of *Bush* and *Chilicky,* plaintiffs concede that claims for monetary relief brought by government employees alleging constitutional violations in the course of their employment are precluded by the CSRA.

They contend, however, that, since they seek equitable relief only, their Fifth Amendment claim should survive. Defendants argue that plaintiffs are simply recharacterizing their claim as a constitutional violation in order to bypass the administrative scheme set forth in the CSRA and that the CSRA provides the exclusive remedy for all constitutional claims by federal employees, whether for monetary or equitable relief.

The First and Tenth Circuits have held that the CSRA precludes government employees from seeking judicial relief for allegedly unconstitutional personnel actions, even those for equitable relief. *See Lombardi v. Small Business Administration,* 889 F.2d 959, 961–62 (10th Cir.1989) ("As to Appellant's assertion that injunctive relief is still available even after Chilicky, we are of the opinion that the clear purpose of Chilicky and the related cases is to virtually prohibit intrusion by the Courts into the statutory scheme established by Congress."); *Berrios v. Dept. of Army,* 884 F.2d 28, 31 (1st Cir. 1989). *See also Broughton v. Courtney,* 861 F.2d 639, 642 (11th Cir.1988) (citing *Hallock v. Moses,* 731 F.2d 754, 757–58 (11th Cir. 1984)). The D.C. Circuit, on the other hand, recognizes a government employee's right to seek equitable, judicial relief for allegedly unconstitutional personnel decisions. *See Weaver v. United States Information Agency,* 87 F.3d 1429, 1433 (D.C.Cir.), *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2407, 138 L.Ed.2d 174 (1997); *Spagnola v. Mathis,* 859 F.2d 223, 230 (D.C.Cir.1988) (en banc) (per curiam). The D.C. Circuit requires exhaustion of such claims where "the statutory and constitutional claims are 'premised on the same facts' and the CSRA remedy 'would have been fully effective in remedying the constitutional violation.'" *Steadman v. Governor, United States Soldiers' and Airmen's Home,* 918 F.2d 963, 967 (D.C.Cir.1990) (quoting *Andrade v. Lauer,* 729 F.2d 1475, 1493 (D.C.Cir.1984)). *Accord Weaver,* 87 F.3d at 1433–34.

The Third Circuit is the only circuit to assert jurisdiction, even in the absence of exhaustion, over all equitable constitutional claims. *See Mitchum v. Hurt,* 73 F.3d 30, 36 (3rd Cir.1995). In *Mitchum,* the Third Cir-

cuit observed that "[j]ust because 'special factors counseling hesitation' militate against the creation of a new non-statutory remedy, it does not necessarily follow that the long-recognized availability of injunctive relief should be restricted as well." *Id.* at 35. The court further stated that "a good argument can be made that the reasoning of Bush should be applied to cases involving only injunctive relief, but .... [w]ithout more specific guidance from the Supreme Court, we do no think that this is a jump that we should make." *Id.* at 36.

The Second Circuit has not ruled on this issue. In *Tiltti v. Weise,* 155 F.3d 596 (2d Cir.1998), customs patrol officers brought an action against the Commissioner of Customs alleging that the geographic reassignment system was arbitrary and capricious and violated the Age Discrimination in Employment Act. The court noted that the circuits are divided on the question whether the CSRA precludes judicial review of constitutional challenges for equitable relief by federal employees. At the same time, however, it quoted in a parenthetical the D.C. Circuit's statement in *Spagnola* that "time and again this court has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights." *Id.* at 602 (citation and quotation omitted). Ultimately, the court found it "unnecessary" to decide this question because it went on to dismiss plaintiffs' claims on the merits. *See id.* at 602–03. *See also Bryant v. Cheney,* 924 F.2d 525, 528 (4th Cir.1991) (also declining to address question). Clearly, then, the issue of the availability of equitable relief in this Circuit remains alive.

■ However, even if such relief is available, plaintiffs' claims will be dismissed for failure to exhaust. Plaintiffs' statutory and constitutional claims are all premised on the agency's failure to implement the promotion, and an administrative finding that the agency was required to implement the promotion would have been fully effective in remedying the alleged due process violation. I agree with the D.C. Circuit that, in these circumstances, plaintiffs should be required to administratively exhaust their claim. *See*

*Steadman,* 918 F.2d at 967; *Sawyer v. Musumeci,* 1997 WL 381798 *2 (S.D.N.Y.1997). *But see Mitchum,* 73 F.3d at 36.

Plaintiffs argue that, since the OSC's protection is wholly discretionary, the right to petition the OSC is constitutionally inadequate. Plaintiffs' assertion is without merit. When an employee files a petition with the OSC, the OSC is required to investigate the allegation and, if it determines that a prohibited personnel practice may have occurred, the OSC may request that the agency take correct action, or it may petition the Merit Systems Protection Board ("MSPB") for such action. *See Tiltti,* 155 F.3d at 601. If the OSC terminates the investigation, it must inform the employee who initiated it of its reason. *See id.* In reference to this process, the D.C. Circuit has stated that, "although the nature of the Special Counsel's inquiry is discretionary, the OSC cannot conduct, under the guise of an exercise of discretion, either an entirely inadequate inquiry or none at all." *Barnhart,* 771 F.2d at 1525. "Congress clearly intended the OSC to be the watchdog of the merit system", *id.* at 1527, and, therefore, employees are required to petition to the OSC prior to filing a claim in federal court. *See id.*

Since plaintiffs' constitutional and statutory claims are premised on the same facts, an appeal to the OSC could have been fully effective in remedying the constitutional violation. Accordingly, there is no logical reason why plaintiffs should not be subject to the exhaustion requirement, and plaintiffs' claim is dismissed for lack of jurisdiction based on their failure to exhaust. Given this conclusion, it is not necessary to consider plaintiffs' claims on the merits.

## CONCLUSION

Plaintiffs' claims are dismissed, and the Clerk of Court is directed to close this case. **SO ORDERED.**