Radio LUZ, et al.

v.

FEDERAL COMMUNICATIONS
COMMISSION, et al.

Radio Vida, et al.

v.

Federal Communications
Commission, et al.

Nos. Civ.A. 99–1591, Civ.A. 99–1593.

United States District Court,
E.D. Pennsylvania.

July 20, 1999.

Paul M. Messing, Philadelphia, PA, Kevin Ernst, Katharine Omansiek, Law Offices of Kevin Ernst, Detroit, MI, for Plaintiffs.

Cedric D. Bullock, James G. Sheehan, U.S. Attorney's Office, Philadelphia, PA, for defendants.

*MEMORANDUM*

BARTLE, District Judge.

Radio Luz and Radio Vida, two radio broadcast stations,[1] have brought these

---

1. The complaints also name a number of individuals as plaintiffs. Who these individuals are is explained only in the attachments to the complaints. In Radio Luz's application for a Federal Communications Commission license, Reverend Pedro Cruz and Grisselle Cruz are identified as the president and a member of the governing board of Radio Luz, respectively. *See* Radio Luz Compl., ex. 3. In affidavits attached to the Radio Luz complaint, the other individuals identify themselves as either Radio Luz listeners or people who utilize Radio Luz to provide information about various organizations with which they are involved.

In Radio Vida's application for a Federal Communications Commission license, Reverend Roberto Figueroa is identified as the president of Radio Vida. *See* Radio Vida Compl., ex. 6. In affidavits attached to the complaint, the other individual plaintiffs attest that they are Lancaster residents who regularly listen to Radio Vida.

civil actions against the Federal Communications Commission ("FCC"). They have also brought claims against two FCC officials pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiffs allege that an FCC regulation restricting their ability to obtain a license to broadcast violates the First Amendment of the Constitution and the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* Presently before the court are the defendants' motions to dismiss or in the alternative for summary judgment.

For the purposes of a motion to dismiss, all well-pleaded factual allegations in the amended complaint are assumed to be true and are viewed in the light most favorable to the plaintiffs. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). We draw any reasonable inferences from the allegations in plaintiffs' favor. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir.1994). A complaint should be dismissed only when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. In deciding a 12(b)(6) motion to dismiss, we may consider documents attached to the complaint, as well as those not formally attached to the complaint if the complaint relies upon those documents and their authenticity is unchallenged. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

The salient facts viewed most favorably to the plaintiffs are as follows. Radio Luz and Radio Vida are nonprofit corporations that operated radio stations in Bethlehem, Pennsylvania and in Lancaster, Pennsylvania, respectively. Both stations broadcast in the Spanish language. Their programs were varied. They included Hispanic culture and religious programs, community events announcements, service announcements, music, news, politics, and "talkshows." No other radio station in the Bethlehem or Lancaster areas provides coverage of such a nature for the Hispanic community. Significantly, neither station had an FCC license to operate its transmitting equipment.

In June, 1997, Radio Luz started broadcasting at radio frequency 91.5 MHZ and later at 94.7 MHZ. On October 23, 1998, Radio Luz received a letter from the FCC stating that an FCC investigation had revealed that the station was operating unlicensed radio transmitting equipment in violation of federal law. The FCC warned that unlicensed operation should discontinue at once. Failure to do so could subject the owner, operator, or both to "severe penalties." That same day, FCC officers entered the Radio Luz studio and turned off its transmitter. Radio Luz alleges that after October 23 it changed its frequency to 92.1 MHZ, yet it also maintains that it has not broadcast since October 23, 1998. The strength of Radio Luz's radio signal was, and remained at all times, below 100 Watts. On February 23, 1999, the station submitted to the FCC an application for a license. In its application, Radio Luz raised constitutional and statutory challenges to the FCC regulation restricting the issuance of new Class D licenses.[2]

For its part, Radio Vida began broadcasting in September, 1998 at radio frequency 106.3 MHZ. Like Radio Luz, Radio Vida has always utilized a radio signal of under 100 Watts. In October, 1998, FCC field agents visited Radio Vida at its Lancaster studio and warned it that it was violating federal law by broadcasting without a license. On November 5, 1998, Radio Vida also received a letter from the FCC stating that an FCC investigation had disclosed that the station had been operating an unlicensed radio transmitter in violation of federal law. The FCC de-

---

In this memorandum, we will refer collectively to the plaintiffs in each action as "Radio Luz" and "Radio Vida."

2. Class D licenses are licenses granted to noncommercial educational stations. *See* 47 C.F.R. § 73.506.

manded that the unlicensed operation cease immediately. It warned of the criminal and civil penalties if such action was not discontinued. On December 16, 1998, Radio Vida received a second warning letter from the FCC. The station applied for an FCC license on March 23, 1999. As in the case of Radio Luz, Radio Vida's application raised constitutional challenges to the FCC regulation restricting the issuance of new Class D licenses.

Radio Luz and Radio Vida both allege that the FCC regulation that restricts the issuance of new Class D licenses, 47 C.F.R. § 73.512(c), violates their First Amendment rights of free speech and freedom of religion. The regulation reads, in relevant part:

> Except in Alaska, no new Class D applications nor major change applications by existing Class D stations are acceptable for filing except by existing Class D stations seeking to change frequency.

47 C.F.R. § 73.512(c). In addition to their constitutional arguments, plaintiffs also allege that the regulation violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.* RFRA provides:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except ... [g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1(a), (b). Plaintiffs seek the following remedy:

> a preliminary injunction to allow the station[s] to continue to broadcast ... [their] religious message while they challenge the validity of the Federal Communication[s] Act (FCA), and to enjoin the Federal Communications Commission (FCC) from *ex parte* seizures and *in rem* forfeitures of Plaintiffs['] radio equipment, criminal prosecutions, and/or from seeking civil penalties during the pendency of their challenge.

Mem. in Supp. of Radio Luz Compl. at p. 1; Mem. in Supp. of Radio Vida Compl. at p. 1.

Pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Radio Luz has joined as a defendant an FCC "regional director for the location of Plaintiffs' radio station," Radio Luz Compl. at ¶ 47, and Radio Vida has joined the FCC District Director for the Philadelphia field office, *see* Radio Vida Compl. at ¶ 44. These officials are sued in their individual and official capacities. *See* Radio Luz Compl. at ¶ 3; Radio Vida Compl. at ¶ 3. Plaintiffs allege that each federal officer "authorized and executed the violations of Plaintiffs' First Amendment rights and their rights under the RFRA when he notified Plaintiffs that they were broadcasting in violation of the FCC regulations and told ... [Plaintiff] to stop broadcasting." Radio Vida Compl. at ¶ 45; *see also* Radio Luz Compl. at ¶ 48. Plaintiffs seek the same injunctive relief for these claims as they seek for their claims against the FCC.

■ The government argues that this court lacks subject matter jurisdiction over the claims raised in plaintiffs' complaints. It contends that pursuant to 47 U.S.C. § 402, it is the United States Court of Appeals, not the district court, that has exclusive jurisdiction to determine the validity of FCC regulations. In essence, it is the government's position that the radio broadcasters are seeking to litigate their claims in the wrong forum. Instead of proceeding in the district court, the government maintains that plaintiffs should first seek to have their constitutional and statutory challenges decided by the FCC and then seek judicial review of any adverse order of the FCC by appealing directly to the court of appeals. *See, e.g., FCC v. ITT World Communications, Inc.,*

466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984).

The Federal Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.,* specifies the jurisdiction of the federal courts to review FCC decisions. Section 402 reads:

Any proceeding to enjoin, set aside, annul, or suspend any order of the ... [FCC] under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28.

...

Appeals may be taken from decisions and orders of the ... [FCC] to the United States Court of Appeals for the District of Columbia in any of the following cases: (1) By any applicant for a ... station license, whose application is denied by the Commission.

47 U.S.C. § 402(a), (b)(1). Chapter 158 provides that "[t]he court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342.

Although we do not know whether the FCC has yet issued orders in the present cases, we do know that the applications of Radio Luz and Radio Vida for licenses have been submitted. In both applications, which are attached to the two complaints, the stations assert that 47 C.F.R. § 73.512(c) violates the First Amendment and that a denial of their applications will therefore violate the First Amendment. The FCC, several courts have held, may in the first instance determine the constitutionality of its regulations. *See, e.g., United States v. Any and All Radio Station Transmission Equipment,* 169 F.3d 548, 554 (8th Cir.1999); *Meredith Corp. v. FCC,* 809 F.2d 863, 872, 874 (D.C.Cir.1987). Radio Luz, but not Radio Vida, has raised an additional argument in the administrative proceeding:

[T]he Religious Freedom Restoration Act ... prohibits government regulation which burdens the exercise of religion even if the burden results from laws of general applicability unless the government demonstrates that the application of the law is the least restrictive means that furthers a compelling governmental interest.

Radio Luz Compl., ex. 1, letter to FCC dated Feb. 23, 1999. These are the same contentions plaintiffs have made in their civil actions before this court. If the licenses are issued, the actions plaintiffs have filed here would become moot. If the licenses are denied, then the FCC will have rejected Radio Luz's First Amendment and RFRA arguments and Radio Vida's First Amendment argument. Any challenge to those decisions would have to be brought in the Court of Appeals for the District of Columbia in accordance with 47 U.S.C. § 402(b)(1). *See Rippe v. FCC,* 528 F.2d 771, 772 (6th Cir.1976).

■ Plaintiffs assert that this court has jurisdiction because of the federal questions involved and pursuant to 42 U.S.C. § 2000bb. That section sets forth Congress's findings in support of RFRA and its purposes for enacting the statute. Nowhere does the statute specifically confer jurisdiction on federal district courts to hear all RFRA claims. Rather, it states, "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb–1(c). Presumably, plaintiffs are relying on 28 U.S.C. § 1331, which grants federal question jurisdiction to the district courts.[3] The general jurisdictional grant of § 1331, however, does not trump a specific jurisdictional provision adopted by Congress for review of an

---

**3.** Title 28 U.S.C. § 1331 reads:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

agency action. *See General Finance Corp. v. FTC,* 700 F.2d 366, 368 (7th Cir.1983) (Posner, J.). In *General Finance,* the targets of an investigation by the Federal Trade Commission filed suit in the district court seeking a declaratory judgment and an injunction to prevent the agency from investigating their activities. The Court of Appeals for the Seventh Circuit faced the question of whether the district court had jurisdiction over the suit pursuant to § 1331 despite the fact that Congress had prescribed that investigatory targets may obtain judicial review of the agency's investigations only when the agency brings a subpoena enforcement action against the target. *See id.* at 368–69. The Court concluded that the district court did not have jurisdiction. "You may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under [§ ] 1331 ... the specific statutory method, if adequate, is exclusive." *Id.* at 368. Having two rounds of judicial review, one in an action under § 1331 and one under the statutory scheme providing for review of adverse agency action, would be unnecessarily duplicative and would waste judicial resources. *See id.* at 396.

The Court of Appeals for the Seventh Circuit came to a similar conclusion in an action brought in the district court by a common carrier organization seeking a declaratory judgment that the Interstate Commerce Commission proceeded unlawfully when it denied the carrier organization's petition for administrative review. *See Assure Competitive Transp., Inc. v. United States,* 629 F.2d 467 (7th Cir.1980). There, the plaintiff asserted that the district court had jurisdiction pursuant to 28 U.S.C. § 1337, which provided, "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce ..." *Id.* at 471 (citing 28 U.S.C. § 1337). The court noted that 28 U.S.C.

§ 2321(a) governed judicial review of the agency's actions. That statute read:

> Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of the title.[4]

*Id.* at 470 (citing 28 U.S.C. § 2321(a)). Examining the interaction of § 2321(a) and § 1337, the court concluded that the district court did not have subject matter jurisdiction over the action. It stated, "It is well established that a special statute vesting jurisdiction in a particular court cuts off the jurisdiction other courts might otherwise have under a more general statute." *Id.* at 471. The proper avenue of relief was for the carrier organization to bring a proceeding in the court of appeals as provided in § 2321(a).

Similarly, in *Erienet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 518 (3d Cir.1998), our Court of Appeals recognized the principle that § 1331 jurisdiction cannot supersede the provisions of a statute conferring exclusive jurisdiction in the court of appeals.

The scheme provided in the Federal Communications Act, 47 U.S.C. § 402, is a specific jurisdictional provision. Thus, § 402 cuts off this court's jurisdiction over plaintiffs' actions. This result does not undermine RFRA, which provides that an aggrieved party may obtain review "in a judicial proceeding," 42 U.S.C. § 2000bb–1(c). Judicial review of plaintiffs' claim under RFRA is available in the court of appeals on appeal from an adverse FCC order.

With these civil actions, plaintiffs have attempted to do an end-run around the statutory scheme established in the Federal Communications Act. Presumably plaintiffs filed these lawsuits before the FCC issued a final decision regarding their license applications. They thereby hope to

---

4. The statute actually read "this title."

obtain more than one bite at the judicial apple. They seek to litigate simultaneously before the FCC and before this court the constitutional and statutory arguments relevant to their license applications. We do not believe the Federal Communications Act permits such a tactic. It would defeat that statutory scheme to allow plaintiffs to file preemptive suits in the district court, in anticipation of an adverse decision by the FCC. The Federal Communications Act does not give this court jurisdiction to hear plaintiffs' claims against the FCC and to grant the injunctive relief plaintiffs seek in order to avoid the outcome of an FCC order. *See ITT World Communications, Inc.*, 466 U.S. at 468–69, 104 S.Ct. 1936.

As noted above, each plaintiff has alleged a *Bivens* claim against an individual FCC official for violations of their constitutional rights. The Supreme Court, in *Bivens*, recognized a cause of action for money damages against federal agents for violations of an individual's constitutional rights. *See Bivens*, 403 U.S. at 397, 91 S.Ct. 1999. Justice Harlan noted that there is a "presumed availability of federal equitable relief against threatened invasions of constitutional interests." *Id.* at 404, 91 S.Ct. 1999 (Harlan, J. concurring); *see also Mitchum v. Hurt*, 73 F.3d 30, 35 (3d Cir.1995). Plaintiffs have not requested money damages. They seek only an injunction to prevent the officers from halting their broadcasts and from enforcing 47 C.F.R. § 73.512(c).

Plaintiffs also rely on *Bivens* as the basis for their claims against the FCC officials for violating RFRA. Plaintiffs' reliance on *Bivens* is misplaced. Since RFRA permits a claim against individual federal officials, the basis of this claim is the statute itself. *See* 42 U.S.C. §§ 2000bb–1(c), 2000bb–2(1); *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 2170, 138 L.Ed.2d 624 (1997).

We must decide whether this court lacks jurisdiction over plaintiffs' claims against the FCC officials for the same reasons it lacks jurisdiction over plaintiffs' claims against the FCC. Our jurisdiction over plaintiffs' *Bivens* claims against the FCC officers is derived from the jurisdictional grant in 28 U.S.C. § 1331. *See Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Mitchum*, 73 F.3d at 34. As previously mentioned, for the RFRA claims, plaintiff presumably also relies upon the general grant of jurisdiction to district courts in 28 U.S.C. § 1331. Again, however, the general jurisdictional grant in § 1331 does not supersede the specific jurisdictional provision in 47 U.S.C. § 402. Plaintiffs raise the same arguments in support of their actions against the FCC officials that they raise against the FCC. They contend that the officers violated their First Amendment and RFRA rights by notifying them that they were in violation of federal law and that they must stop broadcasting. The broadcasters seek the same relief in all of their claims. They want to prevent the FCC from halting their broadcasts. As is true for their claims against the FCC itself, if plaintiffs' license applications are granted, the claims they have against the individual FCC officers and the injunction they seek become moot. In essence, plaintiffs' claims against the FCC officials are an attempt to have this court adjudicate the same claims which they have asserted against the FCC and which they have raised in their applications for FCC licenses. Again, we think it would defeat the jurisdictional scheme provided in the Federal Communications Act to allow plaintiffs to bring in this court their claims against the FCC official.

Accordingly, we will dismiss plaintiffs' complaints for failure to state claims upon which relief can be granted.[5]

---

5. Because we will grant the defendants' motions to dismiss, we need not pass upon defendants' alternative motions for summary judgment.